**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSE ENRIQUEZ and QUINN COLMENERO**, individually and on behalf of themselves and those similarly situated,<br><br>            **Plaintiffs,**<br><br>    vs.<br><br>**INTERSTATE GROUP, LLC; SHAWN LUTEYN; and DOES 1 to 50,**<br><br>            **Defendants.** | Case No.:  11-CV-05155 YGR<br><br>**ORDER DENYING MOTION OF DEFENDANT SHAWN LUTEYN TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |

Plaintiffs Jose Enriquez ("Enriquez") and Quinn Colmenero ("Colmenero") bring this putative class action, on behalf of themselves and similarly situated current and former employees of Defendant Interstate Group, LLC ("Interstate") for violation of state and federal labor laws. Plaintiffs also bring two claims in their individual capacities against Interstate and its Chief Operating Officer, Shawn Luteyn ("Luteyn"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.:  (1) failure to pay overtime (Count One); and (2) wrongful termination (Count Eleven).  (Dkt. No. 23, "First Amended Complaint" ("FAC") ¶¶ 34-41, 101-06.)

Luteyn, who works and resides in Idaho, has filed a Motion to Dismiss on the grounds that the Court lacks personal jurisdiction.  The Court held oral argument on July 10, 2012 and ordered supplemental briefing.

Having carefully considered the papers submitted, the pleadings, and the oral argument of counsel, for the reasons set forth below, the Court hereby **DENIES** Luteyn's to Dismiss.

# I. BACKGROUND[1]

Interstate manufactures and sells auto, cargo, construction, recreational and sport, utility, and work trailers. (FAC ¶ 9.) Interstate owns and operates approximately 37 retail dealerships throughout the United States, including eight stores in California, that specialize in the sale of its trailers. (*Id.*) Luteyn is the Chief Operating Officer of Interstate, and he resides and maintains his office in Idaho. (*Id.* ¶ 13.)

Both Plaintiffs worked at Interstate's dealership in Santa Rosa, California, TrailersPlus. Colmenero worked as a Sales Associate[2] from September 2009 to May 2010 and from August 2011 to September 2011. (*Id.* ¶ 8.) Between May 2010 and August 2011, Colmenero worked as a store manager. (*Id.*) Enriquez has worked as a Sales Associate at TrailersPlus in Santa Rosa, California, since December 2009. (*Id.* ¶ 7.)

## A. OVERTIME CLAIM

Plaintiffs' first claim is for failure to pay overtime. (*Id.* ¶ 36.) The FLSA requires employers pay non-exempt employees overtime rates for each hour worked in excess over forty hours in a workweek. 29 U.S.C. § 207. Plaintiffs allege that Interstate misclassifies Sales Managers as exempt employees so that it does not have to pay Sales Managers overtime for any work in excess of forty hours in a week. (FAC ¶ 16.) Plaintiffs also allege that Interstate has a policy of prohibiting its Sales Associates from logging more than 39.5 hours, regardless of actual hours worked. (*Id.* ¶ 17.) If a Sales Associate logs more than 39.5 hours on a timecard, the Sales Associate is required to change the timecard or the timecard will be changed for the Sales Associate. (*Id.*) Plaintiffs claim that Luteyn "was the primary decision maker with respect to the violations of the FLSA." (*Id.* ¶ 13.)

## B. COLMENERO'S WRONGFUL TERMINATION CLAIM

Colmenero also brings a claim for wrongful termination against both Interstate and Luteyn. On July 22, 2011, Colmenero filed a formal written complaint with the California Department of

---

[1] Because the pending Motion addresses only certain claims and issues, this section is not intended to provide an exhaustive summary of the factual or procedural background in this action.

[2] In the parties' briefs, Plaintiffs refer to this position as "Sales Associate," while Defendant refers to the same position as "Sales Consultant." For consistency purposes only, the Court will use the term "Sales Associate" throughout.

Labor Standards Enforcement ("DLSE"), claiming that Interstate failed to pay overtime when employees worked in excess of 8 hours in a day.  (*Id.* ¶ 96.)  Colmenero alleges that prior to the hearing on the DLSE complaint, he was summoned into his manager's office to participate in a conference call with Luteyn to discuss the basis for the DLSE claim.  (Dkt. No. 17, Ex. A, Declaration of Quinn Colmenero ("Colmenero Dec."), ¶ 5.)  Colmenero alleges that Luteyn primarily represented Interstate at the August 31, 2011 DLSE hearing, which resulted in a settlement and the issuance of back pay to Interstate employees.  (*Id.* ¶ 7; *see also*, Supplemental Declaration of Shawn Luteyn ("Luteyn Supp. Dec."), Dkt. No. 19-1, ¶ 11 ( "Colmenero overstates my role in the California DLSE settlement conference"); Deposition of Shawn Luteyn ("Luteyn Dep."), Dkt. No. 46-1, at 189:1-3.)

Colmenero was terminated on September 10, 2011, allegedly in retaliation for filing the DLSE complaint.  (FAC ¶ 98.)  Luteyn fired Colmenero via telephone after another Interstate employee reported feeling harassed when Colmenero inquired about the phone number for a former store manager.  (Colmenero Dec. ¶ 8; *see also*, Luteyn Dep. at 183:14-16 ("I was brought into it, yes").)  The FAC alleges that Luteyn was the decision maker in Colmenero's firing.  (FAC ¶ 98.)

## II.    DISCUSSION

### A.    LEGAL STANDARD UNDER RULE 12(b)(2)

A motion under Federal Rule of Civil Procedure 12(b)(2) challenges the Court's exercise of personal jurisdiction over a defendant.  Fed. R. Civ. P. 12(b)(2).  Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits, here, California.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of the state or of the United States."  Cal. Civ. Proc. Code § 410.10.

Due process requires that the non-resident defendant have either a "substantial, continuous, and systematic" presence in the forum state or sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Where the non-resident defendant's forum-related activities are not "substantial, continuous, and systematic," the Court must

evaluate whether the specific activity giving rise to the Plaintiffs' causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952); *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958).

The Ninth Circuit applies a three-part test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, *supra*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiffs bear the burden of demonstrating the first two parts. *Boschetto v. Hansing*, 539 F.2d 1011, 1016 (9th Cir. 2008). If the plaintiffs fail to satisfy either of these parts, then personal jurisdiction is not established in the forum state. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1555 (9th Cir. 2006). If the plaintiffs carry this burden, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (citing *Schwarzenegger*, *supra*, 374 F.3d at 802).

Where, as here, the motion to dismiss is based on written materials–pleadings, declarations, and Luteyn's deposition–rather than an evidentiary hearing, the plaintiffs need only make a prima facie showing of jurisdiction. *Schwarzenneger*, *supra*, 374 F.3d at 800. The plaintiffs must make this showing with respect to each claim. *Fiore v. Walden*, 657 F.3d 838, 858 (9th Cir. 2011). A plaintiff makes a "prima facie" showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint; where allegations are contested, they "are construed in the light most favorable to the plaintiff[s] and all doubts are resolved in [their] favor." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

**A.     MINIMUM CONTACTS ANALYSIS**

Analyzing Luteyn's acts under the minimum contacts test demonstrates that Luteyn has sufficient minimum contacts for the Court to exercise specific jurisdiction as to each claim.

*1.     Part One:  Purposeful Direction*

The first part of the minimum contacts test is subdivided into purposeful direction, which generally applies to tort claims, and purposeful availment, which generally applies to contract claims. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006). Although claims of unlawful employment practices presuppose an employment contract, FLSA claims generally are analyzed as torts under purposeful direction. *See Holliday v. Lifestyle Lift, Inc.*, No. C-09-4995 RS, 2010 WL 3910143 (N.D. Cal. Oct. 5, 2010).

The first part of the minimum contacts test is satisfied where a defendant purposefully directs his activities at the forum state. *Schwarzenegger*, *supra*, 374 F.3d at 802-03. Courts focus on where the defendant's actions were felt, not whether the acts occurred within this forum. *Yahoo!*, *supra*, 433 F.3d at 1205. Thus, courts analyze this issue using the "effects test." *Schwarzenegger*, *supra*, 374 F.3d at 802 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). Under the "effects test," the defendant allegedly must have (a) committed an intentional act; (b) expressly aimed at the forum state; (c) which caused harm that the defendant knew was likely to be suffered in the forum state. *Id.*

*a)     Intentional Act*[3]

"'[I]ntent' in the context of the 'intentional act' test [refers] to an intent to

---

[3] Luteyn contends that the fiduciary shield doctrine precludes his acts from counting towards the minimum contacts test because they were conducted in his role as a corporate officer. (Mot. at 9-10.) In the Motion, he raises the doctrine only in respect to general jurisdiction. However, he also references the doctrine in his specific jurisdiction analysis.

Luteyn's acts are not protected by the fiduciary shield doctrine because he is alleged to have been a "primary participant" in the alleged wrongdoing. *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985).  Under the fiduciary shield doctrine, "the acts of corporate officers & directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individual." *Colt Studio v. Badpuppy Enter.*, 75 F. Supp. 2d 1103, 1111 (C.D. Cal. 1999) (citing *Shearer v. Superior Court*, 70 Cal. App. 3d 424, 430 (1977)).  One exception to the fiduciary shield doctrine is if the defendant is a primary participant in alleged wrongdoing. *Allstar Mktg. Group*, *supra*, 666 F. Supp. 2d at 1120. Plaintiffs have alleged that Luteyn was a "primary participant" in the alleged wrongdoing: Luteyn was the decision maker with respect to the overtime policies, and Luteyn personally fired Colmenero. (FAC ¶¶ 13, 98.)

perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id*. at 806.

      Here, the policy decision to deny overtime compensation satisfies the intentional act prong. Plaintiffs claim that Luteyn "was the primary decision maker with respect to the violations of the FLSA." (FAC ¶ 13.) In other words, Luteyn is alleged to have promulgated both the policy decision to misclassify Store Managers as exempt, and the policy decision to deny overtime compensation to Sales Associates. (*Id*.) Luteyn does not argue to the contrary, but instead claims that he manages operations at only a high level and he is not involved with individual store employee issues. Since Plaintiffs allege that the FLSA violations occur in all eight California stores, if not all 37 Interstate stores, the alleged overtime violations are not based on individual store level employee decisions but corporate policies. Accordingly, the uncontroverted allegation that Luteyn made the policy decision to deny overtime compensation in violation of the FLSA operates as the "intentional act" under the "effects test." *See Holliday*, 2010 WL 3910143 (policy decision to deny overtime compensation to all non-exempt employees in violation of FLSA "operates as the 'intentional act'").

      Colmenero's termination likewise satisfies the intentional act prong. Luteyn contends that his role in Colmenero's termination was limited to ratifying the decision of a store manager. However, Luteyn does not deny, refute, or attempt to contradict the allegation that he was the individual who fired Colmenero. Taking as true, the uncontroverted allegation that Luteyn uttered words to the effect of "you're fired," Luteyn's role in Colmenero's termination went beyond mere ratification, he personally participated in the allegedly wrongful termination. Moreover, Plaintiffs have proffered the declaration[4] of an individual present when Luteyn fired Colmenero that states it was Luteyn who made the decision to fire Colmenero. (Dkt. No. 47.) "Conflicts between parties over statements contained in affidavits must be resolved in plaintiff's favor." *Schwarzenegger*, *supra*, 374 F.3d at 800.

      Based on the foregoing analysis, the Court concludes that Luteyn's allegedly unlawful conduct satisfies the intentional act prong of the effects test.

---

[4] Larry Tait, the Regional Manager who worked out of the Santa Rosa, California store at the time, provided a sworn declaration that Luteyn made the decision to terminate Colmenero, and that Luteyn personally fired Colmenero. (Dkt. No. 47.)

        *b)*     *Express Aiming*

The express aiming requirement is satisfied if a defendant knows the plaintiff is a resident of the forum state at the time his wrongful conduct occurs. *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002).

The allegedly unlawful overtime policy satisfies the "express aiming" requirement of the effects test. By operating eight retail stores in California and applying allegedly unlawful overtime policies to stores in California, Luteyn targeted California. The retaliatory termination also satisfies the "express aiming" requirement of the effects test. At the time Luteyn fired Colmenero he was aware that Colmenero worked in the Santa Clara, California store and that Colmenero lived in California.[5] (Colmenero Dec. ¶¶ 3-7.)

Based on the foregoing analysis, the Court concludes that Luteyn's allegedly unlawful conduct was expressly aimed at Plaintiffs in California.

        *c)*     *Foreseeable Harm*

The third element of the effects test–causing harm that the defendant knows is likely to be suffered in the forum state–is similarly satisfied.

By applying the allegedly unlawful overtime policies here in California, Luteyn would reasonably have known that California employees would be harmed by such policies. With respect to the retaliatory termination claim, Luteyn knew that Colmenero lived and worked in California and therefore, it was foreseeable that the harm from firing Colmenero would occur in California.

Based on the foregoing analysis, the Court concludes that Plaintiffs have presented sufficient allegations and facts to demonstrate that Luteyn purposefully directed his actions at California so as to satisfy the first part of the minimum contacts test.

      2.     *Part Two*:  *Forum-related activities*

The requirement that the claims "arise out of" or "relate to" the defendant's forum-related activities is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Omeluk v. Langsten Slip & Bathyggeri A/S*, 52 F.3d 267, 271

---

[5] For purposes of this motion, it has not been disputed that Luteyn had a phone conversation with Colmenero concerning his California overtime wage claim, Luteyn represented Interstate at the hearing before the California administrative agency, and Luteyn terminated Colmenero's employment.

(9th Cir. 1995); *see also*, *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2000). Luteyn argues that Plaintiffs cannot satisfy this part of the test because they fail to allege a single act that ties Luteyn to California.[6] Luteyn either misreads the FAC or simply ignores the facts alleged.

In light of the allegations that Luteyn personally promulgated unlawful overtime compensation policies, and that Luteyn decided to terminate Colmenero and personally executed that decision, the arising out of prong is easily satisfied. Here, "but for" Luteyn's alleged promulgation of unlawful overtime policies that applied to Interstate's California stores, Colmenero and Enriquez would not have an overtime claim. Likewise, "but for" Luteyn's act of terminating Colmenero's employment at the Santa Rosa, California store, and allegedly in retaliation for filing a complaint with the California DLSE, Colmenero would not have a claim for retaliatory termination.

Therefore, the Court concludes that Plaintiffs' overtime claim and Colmenero's retaliation claim arise out of or relate to Luteyn's forum-related activities.

### 3. *Part Three: Reasonableness*

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotations omitted). To determine whether a particular exercise of personal jurisdiction is reasonable, the Court must analyze seven factors: (a) the extent of the defendant's purposeful interjection into the forum; (b) the burden on the defendant in litigating in the forum; (c) the extent of conflict with the sovereignty of the defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to the plaintiff's interest in convenient and effective

---

[6] Luteyn argues that he cannot be held personally liable under the FLSA because he did not act as Plaintiff's "employer" within the meaning of the FLSA. Luteyn argues that because he does not hold a "significant ownership interest" in Interstate or exercise "operational control . . . over day to day functions," he cannot be held liable under a derivative liability theory. This again ignores that Plaintiffs are not attempting to impute liability or jurisdiction over Luteyn based on acts of the corporation by virtue of his position as a corporate officer. Rather, Plaintiffs argue that Luteyn's own acts are sufficient to establish minimum contacts.

1 relief; and (g) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). An analysis of these factors demonstrates that an exercise of jurisdiction is reasonable.

### a) *Purposeful interjection into the forum.*

The first factor, regarding the extent of the defendant's purposeful interjection into the forum state's affairs, "parallels the question of minimum contacts" in determining the reasonableness of an exercise of specific jurisdiction. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong would be redundant"). Luteyn argues that there is no evidence that he purposefully interjected himself into California's affairs. Since Plaintiffs satisfied the first prong of purposeful availment by showing that Luteyn purposefully directed his activities at California, this factor weighs in favor of finding that the exercise of jurisdiction is reasonable.

### b) *Burden on defendant of litigating in a foreign forum.*

The second factor focuses on the burden that defending in a particular forum. *Core-Vent*, *supra*, 11 F.3d at 1487. For the Court's exercise of jurisdiction to be unreasonable, the burden of defending in California must be "so gravely difficult and inconvenient" that it violates due process. *See Burger King*, *supra*, 471 U.S. at 485 (litigating in forum must be "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.") (internal quotations omitted). This factor also must be considered in relation to the corresponding burden on the plaintiff. *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Luteyn argues that "[t]he burden on Luteyn, who lives and works in Idaho, is substantial." (Mot. 13.) Luteyn is the COO of a company with eight stores in California, and he has visited California for the opening of at least some of those stores. (FAC ¶ 9; Luteyn Supp. Dec. ¶ 14; Luteyn Dep. at 30:6-32:3, 234:13-235:12.) His declaration indicates that he has performed his regular work while in California on previous occasions. (Luteyn Supp. Dec. ¶ 14.) Additionally, Luteyn's deposition testimony indicates that he travels to California for leisure approximately once per year. (Luteyn Dep. at 235:4-13) By contrast, Colmenero is now unemployed (*see* Colmenero Dec. ¶ 14), nothing

9

indicates that Enriquez or Colmenero have ever traveled to Idaho, and many of their likely witnesses reside in California. This factor thus supports a finding of reasonableness.

### c) *Conflict with Idaho's sovereignty.*

With respect to the third factor, Luteyn does not argue that exercise of jurisdiction over him would conflict with Idaho's sovereignty, but instead argues that Idaho has an interest in resolving a lawsuit against one of its residents. *See Core-Vent*, *supra*, 11 F.3d at 1487. Although this case involves a resident of Idaho, there is no indication that the exercise of jurisdiction over Luteyn would interfere with Idaho's sovereignty. This factor thus supports a finding of reasonableness.

### d) *Forum state's interest.*

The fourth factor concerns the forum state's interest in adjudicating the dispute. *Id.* California has a strong interest in adjudicating this matter because the injuries alleged occurred here in California and Plaintiffs are residents of California. Thus, the fourth factor indicates the exercise of jurisdiction over Luteyn would be reasonable.

### e) *Most efficient forum for judicial resolution.*

The fifth factor considers which forum will provide the most efficient judicial resolution. *Id.* Resolving the claims here will be more efficient. First, the claims asserted against Luteyn are also asserted against Interstate, and thus, the claims will be resolved in this forum even if Luteyn is dismissed from this lawsuit. Accordingly, it is more efficient to resolve these claims in one, rather than two forums. Second, the overtime claim is related to the California state law claims, and some degree of overlap in witnesses and evidence is likely. Luteyn has not indicated there are any witnesses or evidence in Idaho. For these reasons, this factor supports a finding of reasonableness.

### f) *Plaintiff's interest in convenient and effective relief.*

The sixth factor, the importance of this forum to Plaintiffs for convenient and effective relief also supports exercising jurisdiction over Luteyn. *Id.* at 1487-88. Colmenero is presently unemployed and has expressed fears of financial distress (Colmenero Dec. ¶ 14). A local forum without travel requirements is more cost-effective for Plaintiff. There is no indication that

either of the Plaintiffs has ever traveled to Idaho, and many of their likely witnesses reside in California. This factor thus supports a finding of reasonableness.

### g) *Existence of an alternative forum.*

The single factor weighing in favor of dismissal is the last factor, the presence of an alternative forum in Idaho. Although an alternative forum exists in Idaho, Luteyn has not "come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Pebble Beach*, *supra*, 453 F.3d at 1555 (citing *Schwarzenegger*, *supra*, 374 F.3d at 802).

Overall, the reasonableness factors indicate that an exercise of personal jurisdiction over Luteyn would be reasonable in this case.

## III. CONCLUSION

Based on the foregoing analysis, the Court concludes that the specific activity giving rise to the Plaintiffs' causes of action is sufficiently related to California to establish personal jurisdiction over Shawn Luteyn. Accepting as true the uncontroverted allegations in the FAC and resolving all conflicts in the evidence in Plaintiffs' favor, Luteyn "could reasonably expect to be haled into court" in California. *See Int'l Shoe*, *supra*, 326 U.S. at 316. Thus, "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*.

The Motion of Defendant Shawn Luteyn to Dismiss the Complaint for Lack of Personal Jurisdiction is **DENIED**.

This Order terminates Dkt. No. 12.

**IT IS SO ORDERED.**

Dated: August 31, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**